IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JASON MADILL, TAMARA MADILL, and FOUR TEN CENTRAL LLC, | CV 24-114-GF-SPW |
| Plaintiffs, | |
| vs. | ORDER ON LEGACY TELECOMMUNICATIONS, LLC'S MOTION TO DISMISS |
| T-MOBILE WEST LLC, DOES 1–4, and X, Y, Z COMPANIES, | |
| Defendants, | |
| vs. | |
| LEGACY TELECOMMUNICATIONS, LLC, | |
| Third-Party Defendant. | |

Third-Party Defendant Legacy Telecommunications, LLC's ("Legacy") has filed a Motion to Dismiss Counts 3, 4, and 5 of Plaintiffs' Complaint and Defendant T-Mobile West LLC's ("T-Mobile") Third-Party Complaint (Doc. 20). Legacy moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 14(a)(2)(C). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 23, 26, 29, 30).

For the following reasons, the Court grants Legacy's motion.

## I.    Background

The following facts are taken from the Plaintiffs' Complaint (Doc. 1-1) and T-Mobile's Third-Party Complaint (Doc. 14).

### A.    *Plaintiffs' Allegations Against T-Mobile*

In 2017, Jason and Tammy Madill purchased real property, colloquially known as the "Strain Building," in Great Falls, Montana.[1] (Doc. 1-1 ¶¶ 8, 11). T-Mobile and Legacy are limited liability companies operating and doing business in the wireless communications industry, including in Montana. (Doc. 14 ¶ 4, 5). The Plaintiffs' case arises from T-Mobile's installation of new cellular equipment on the existing cellular tower located on the roof of the Strain Building.

In July 2020, T-Mobile approached the Madills about using the cellular tower on the Strain Building for its network. (Doc. 1-1 ¶ 14). T-Mobile claimed the installation would be "quick, timely, [and] non-invasive." (*Id.* ¶ 15). T-Mobile assured that most work would occur on the elevated platform and, if roof access was needed, protective matting would be used to prevent damages. (*Id.* ¶ 16). They guaranteed that all work personnel would be "competent, qualified, and experienced." (*Id.* ¶ 18). T-Mobile also promised not to disrupt tenants or business operations and stated that radiation or radio waves would not limit roof access after

---

[1] Four Ten Central LLC assumed ownership of the property on April 10, 2024. (Doc. 1-1 ¶ 9).

installation. (*Id.* ¶¶ 15, 17). Based on theses assurances, the Madills entered into a Site Lease Agreement with T-Mobile in 2021, after which T-Mobile began the installation. (*Id.* ¶¶ 15–22).

Plaintiffs claim that T-Mobile's work on the Strain Building's roof caused significant damage to the roof, supporting structure, and interior. (*Id.* ¶¶ 30, 32, 33). During installation, the roof began leaking after T-Mobile made cuts, tears, and holes in the roof's synthetic membrane. (*Id.* ¶ 21). When the sixth-floor experienced water damage, T-Mobile was notified and temporarily fixed the leaks with Flex Seal and Gorilla Tape. (*Id.*). T-Mobile worked on the roof without protective mats and on one occasion, left an unsecured communication box unattended, which froze, thawed, and damaged the roof's membrane. (*Id.* ¶ 23). Workers used, stored, and moved heavy equipment across the roof. (*Id.* ¶¶ 24–28). Plaintiffs allege "177 instances of piercings, holes, lacerations, tears and places where the roof has been pulled away from the building." (*Id.* ¶ 30). After the installation, T-Mobile placed signs at the roof's entrance warning that radio frequency fields exceed Federal Communications Commission limits. (*Id.* ¶ 35).

Plaintiffs fault T-Mobile for hundreds of thousands of dollars spent on repairs and mitigation, claiming that the roof's membrane, substrate, and supporting structure need replacement due to T-Mobile's installation. (*Id.* ¶ 32). They also hold T-Mobile responsible for the access restrictions now in place on the roof. (*Id.* ¶ 36).

On October 1, 2024, the Plaintiffs filed a Complaint against T-Mobile in the Montana Eighth Judicial District Court, Cascade County. T-Mobile removed the case to this Court based on diversity jurisdiction. (Docs. 1, 4).

Plaintiffs allege the following causes of action against T-Mobile:

(1) Negligence;

(2) Breach of the Implied Covenant of Good Faith and Fair Dealing;

(3) Deceit;

(4) Constructive Fraud;

(5) Negligent Misrepresentation; and

(6) Breach of Contract

(Doc. 1-1 ¶¶ 43–84).

B. *T-Mobile's Third-Party Allegations Against Legacy*

Legacy worked on the Strain Building's cellular installation project in 2022 when T-Mobile executed a Master Statement of Work ("MSOW") with Legacy. The MSOW governed the construction services that Legacy provided to T-Mobile while it worked on the Strain Building installation. (Doc. 25). T-Mobile claims that Legacy "performed the bulk of the work on the roof" including the installation and removal of "cabinets, cables, earthquake bracing, racks, mounts, batteries, antennas and radio units, broadband modules, GPS kits, microwave dishes, [and] remote radio heads." (Doc. 14 ¶ 10). According to T-Mobile, the MSOW "required Legacy—in

4

the event of any negligence by T-Mobile and/or its agents/contractors—to indemnify T-Mobile for any liability resulting from any such negligence" and to "indemnify T-Mobile for damages related to any negligence by T-Mobile and/or its agents/contractors." (*Id.* ¶¶ 12, 13).

On March 7, 2025, T-Mobile filed a Third-Party Complaint against Legacy. T-Mobile seeks "indemnity and/or contribution for any amounts owed by T-Mobile to Plaintiffs" pursuant to Montana Code Annotated § 27-1-703. (*Id.* ¶ 14).

### C.    The Instant Motion

Before the Court is Legacy's motion to dismiss for failure to state a claim on the grounds that (1) Plaintiffs' Counts 3, 4, and 5 fail to allege fraud-based claims with sufficient particularity and lack sufficient factual allegations to state a plausible claim for relief and (2) T-Mobile's Third-Party Complaint fails to state a claim for relief to the extent it seeks indemnity or contribution for damages based on its own negligence.

## II.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible

if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id*. Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.    Discussion

### A.    Motion to Dismiss Plaintiffs' Counts 3, 4, and 5

As an initial matter, Legacy and the Plaintiffs dispute as to whether Legacy may bring a defense against Plaintiffs' claims as a Third-Party Defendant. (*See* Doc. 26 at 8–11; Doc. 30 at 2–4). Consequently, before the Court turns to the merits of the parties' arguments, it must first determine whether Legacy may assert a 12(b)(6) defense against Plaintiffs' claims as a Third-Party Defendant.

### 1.    Availability of Rule 12(b)(6) Defense as a Third-Party Defendant

"The person served with the summons and third-party complaint—the 'third-party defendant': may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." Fed. R. Civ. P. 14(a)(2)(C).  Rule 14(a)'s

rationale is two-fold.  First, it "helps to reduce the risk of collusion between [the Plaintiffs and T-Mobile, the Defendant/Third-Party Plaintiff]."  *See Lindner v. Meadow Gold Dairies, Inc.*, 515 F. Supp. 2d 1141, 1148 (D. Haw. 2007).  Second, it "prevents the prejudice or unfairness that could result from [T-Mobile's] failure (for whatever reason) to assert the appropriate defenses." *Lindner*, 515 F. Supp. 2d at 1149.  The Advisory Committee Notes to Rule 14 explain:

> [R]ule 14(a) has been expanded to clarify the right of the third-party defendant to assert any defenses which the third-party plaintiff may have to the plaintiff's claim. This protects the impleaded third-party defendant where the third-party plaintiff fails or neglects to assert a proper defense to the plaintiff's action.

Fed. R. Civ. P. 14(a) Advisory Comm. Notes to 1946 Amendment.  Though the Plaintiffs and Legacy are not technically opposing parties, Rule 14 "recognizes the derivative nature of the third-party defendant's potential liability and permits it essentially to stand in the defendant's shoes and assert it's defenses." *Lindner*, 515 F. Supp. 2d at 1149.

Accordingly, Legacy may assert defenses against the Plaintiffs permitted by Rule 12,[2] including a 12(b)(6) defense. *See* 5A Wright & Miller, § 1457.

/ / /

---

[2] "[T]he third-party defendant may not object to the court's lack of personal jurisdiction over defendant under Rule 12(b)(2), its lack of venue over the original action under Rule 12(b)(3), or defective service under Rules 12(b)(4) or (5), even if the original defendant has not waived these defenses at the time the third-party defendant interposes a responsive pleading." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1457 (3d ed. 2025). These matters are the defendant's personal defenses and thus, unavailable to the third-party defendant.

### 2. *Dismissal Under Rule 9(b)*

Plaintiffs assert claims against T-Mobile for deceit (Count 3), constructive fraud (Count 4), and negligent misrepresentation (Count 5). All three Counts are subject to Rule 9(b)'s heightened pleading standard. *See Let's Get Moving, Llp v. Lagestics, LLC*, 2023 WL 8111595, No. CV-23-14-BU, at *3 (D. Mont. Nov. 22, 2023); *Deveraux v. Meadowlark of Billings LLC*, 2023 WL 2330311, CV 22-136-BLG, at *2 (D. Mont. Mar. 2, 2023). Legacy challenges Counts 3–5's legal sufficiency under Rules 8 and 9 of the Federal Rules of Civil Procedure by moving to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Under Rule 8(a)(2), the Court "assume[s] the veracity of a complaint's factual allegations and then determine[s] whether they plausibly give rise to an entitlement of relief." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1179 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9 imposes additional pleading requirements on a pleader, supplementing the pleading obligations found in Rule 8. Fed. R. Civ. P. 8, 9. If the pleader alleges fraud or mistake, the pleader must satisfy particularity requirements, meaning "the pleader must state the time, place, and specific content of the false representations

as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.3d 1393, 1400 (9th Cir. 1986). In other words, "[a] complaint must 'identify the who, what, when, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false' to satisfy the heightened pleading standard." *Let's Get Moving*, 2023 WL 8111595, at *3 (internal citations omitted)); *United Healthcare*, 848 F.3d at 1180. Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977).

Rule 9(b)'s requirement of specificity and detailed allegations, however, "should not be construed in an unduly strict fashion." Wright & Miller, § 1291 (4th ed.); *see also United Healthcare*, 848 F.3d at 1180 (quoting Wright & Miller, § 1298) ("this standard 'does not require absolute particularity or a recital of the evidence'"). Rather, whether the defendant has adequate notice of the particular misconduct is a fact-specific inquiry that takes into account the characteristics of the parties and circumstances of the representations. *See* Wright & Miller, § 1296 (explaining that the particularity requirement is more stringent for allegations against businesses with large numbers of transactions); *United Healthcare*, 848 F.3d at

1181–83 (explaining the particularity requirements for a claim against large national insurance companies and targeting tens of thousands of alleged representations).

The Court considers Plaintiffs' Counts 3–5 in turn to determine whether they withstand Rule 9(b)'s heightened pleading standard.

### a. Deceit (Count 3)

The Plaintiffs' deceit claim stems from T-Mobile's alleged false assertions, suppression of facts, and false promises made to the Madills before entering the Site Lease Agreement in 2021. (Doc. 26 at 13). Legacy argues that the Plaintiffs fail to identify with sufficient particularity who made the representations, when the representations were made, and where they were made. (Doc. 23 at 8; Doc. 30 at 5). Legacy further argues that the Complaint fails to state with particularity why the alleged representations were false at the time they were made. (Doc. 30 at 9–13).

Under Montana law, a person is liable for deceit when that person "willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk." Mont. Code Ann. § 27-1-712(1) (2023). Deceit is either:

(a) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(b) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(c) The suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or

10

(d) A promise made without any intention of performing it.

*Id.* § 27-1-712(2).

As stated above, "[a] complaint must 'identify the who, what, when, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false' to satisfy the heightened pleading standard." *Let's Get Moving*, 2023 WL 8111595, at *3 (internal citations omitted). Legacy does not dispute Plaintiffs' identification of "what" and "how" the misconduct occurred. Regardless, the Court disagrees with Legacy as to whether the Plaintiff identified "who," "when," and "where" the false assertions were made. Yet, the Court agrees with Legacy that Plaintiffs did not sufficiently identify what assertions were false and why, and therefore, fail to state a claim of deceit with enough particularity.

### i. "Who," "When," and "Where"

Contrary to Legacy's arguments, "a complaint need not allege 'a precise timeframe,' 'describe in detail a specific transaction,' or identify the 'precise method' used to carry out the fraud." *United Healthcare*, 848 F.3d at 1180 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Nevertheless, the fraud allegations must be specific enough to put a defendant on notice of the particular misconduct so they can prepare an adequate answer. *See Bosse*, 565 F.2d at 611. The Plaintiffs have met their burden.

11

First, as to who carried out the fraudulent misconduct, the Plaintiffs repeatedly identify "T-Mobile and its agents/contractors." (Doc. 1-1 ¶¶ 14–19, 56–78). Though the Plaintiffs do not specify which T-Mobile employee made false assertions, the interactions between the Madills and T-Mobile were so limited making it likely that T-Mobile could identify the employee. Even if multiple T-Mobile employees made false suggestions or suppressed facts, the Complaint is clear that T-Mobile, and no other named defendant, is responsible for the alleged falsities. Thus, the Court finds that Plaintiffs adequately put T-Mobile on notice as to who engaged in the alleged misconduct.

Second, the Plaintiffs adequately allege when the assertions were made. The Complaint states that "[o]n or about July 28, 2020, Jason and Tammy were contacted by T-Mobile West LLC (or its agent)" and the Madills entered into the Site Lease Agreement on June 3, 2021—a span of 11 months. (Doc. 1-1 ¶¶ 14, 19). This 11-month period sufficiently puts T-Mobile on notice because the Plaintiffs do not need to allege a "precise timeframe" to satisfy Rule 9(b)'s heightened standard. *See United Healthcare*, 848 F.3d at 1180 (internal citations omitted). In *United Healthcare*, for example, the Ninth Circuit found that a two-year span met Rule 9(b)'s standard for "when" the alleged fraud occurred. 848 F.3d at 1181 (the complaint alleged the misconduct occurred "[b]etween and during about 2005 and about 2007" and "[d]uring or after June 2008"). Because Plaintiffs 11-month period

is less then a 2-year span, the Court finds that Plaintiffs adequately put T-Mobile on notice as to when the alleged misconduct occurred.

Finally, Legacy argues that Plaintiffs failed to allege where the false assertions took place, including whether they were made in person, on a phone call, or through other written communication. (Doc. 30 at 8). However, a complaint need not "identify the 'precise method' used to carry out the fraud," and therefore, Plaintiffs' allegations are sufficient. *United Healthcare*, 848 F.3d at 1180 (internal citations omitted). The alleged misconduct arose out of a singular transaction culminating into a singular lease agreement. Though the parties could have engaged in multiple conversations or exchanged various types of communication, the Complaint adequately alleges specific misconduct as it relates to the proposed work on the Strain Building's roof in Great Falls, Montana. It is the only event and the only place comprising the basis of the Complaint. Thus, Plaintiffs adequately identify where the alleged misconduct occurred.

In sum, the Plaintiffs' pleading specifically and sufficiently puts T-Mobile on notice regarding "who," "when," and "where" the false assertions were made so they can prepare an adequate answer.[3]

/ / /

/ / /

---

[3] Though not dispositive to Legacy's Motion, the Court notes that T-Mobile did file an Answer to Plaintiffs' Complaint. (Doc. 4).

### ii. Falsity of Suggestions, Assertions, and Facts

To further satisfy Rule 9(b), Plaintiffs must next plead that T-Mobile's assertions were false, and that they knew of their falsity or were ignorant of their truth. *See Deveraux*, 2023 WL 2330311, at *4. In other words, an allegation of falsity requires Plaintiffs to plead "what is false or misleading about a statement, and why it is false." *United Healthcare*, 848 F.3d at 1180. The representation also "must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud." *Glen Holly Ent. Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).

Legacy argues that the Plaintiffs do not explain what is false or misleading about T-Mobile's statements and why. (Doc. 30 at 9). Legacy aptly asserts:

> Plaintiffs want the Court to infer that because the alleged representations regarding the scope and nature of the work to be performed on the roof of the Strain Building ultimately did not materialize, T-Mobile and its agents/contractors 'must have' made them without any reasonable ground for believing them to be true.

(*Id.* at 11).

Plaintiffs retort that the Complaint properly alleges a plausible deceit claim against T-Mobile and that "T-Mobile's willful deception was intended to, and did, induce Plaintiffs to enter into the Site Lease Agreement." (Doc. 26 at 14). Plaintiffs assert they relied on false suggestions regarding the scope, nature and quality of work; were misled by suppression of facts regarding radiation levels and roof access;

14

and relied on false promises regarding competent work product and payment for repairs—all of which led to significant damages to Plaintiffs. (*Id.* at 13–14).

When considering the Complaint as a whole, the Plaintiffs do not state with particularity why T-Mobile's statements, at the time they were made, were false and that they either knew they were false or were ignorant of their truth. Instead, Plaintiffs merely label T-Mobile's statements as false.

Plaintiffs allege the following in Count 3:

T-Mobile West LLC and its agents/contractors made assertions of fact to Plaintiffs when they had no reasonable ground for believing those assertions to be true.

T-Mobile West LLC and its agents/contractors suppressed facts from Plaintiffs although they were bound to disclose the truth of these issues to Plaintiff[s].

(Doc. 1-1 ¶¶ 57, 58). The alleged assertions involve T-Mobile's promises of non-invasive work, timely installation, and competent workmanship, as well as promises to repair damages. (*Id.* ¶¶ 15–18). Likewise, the suppressed facts involve T-Mobile's alleged withholding of details about radiation levels and corresponding warnings that would restrict roof access. (*Id.* ¶¶ 39–40). Though the installation did not proceed as T-Mobile asserted, Plaintiffs do not allege that T-Mobile knew the scope of the installation would be invasive or that the nature and quality of the workmanship would be untimely, slow, or incompetent. Nor do they claim T-Mobile was aware or ignorant of the fact that workers would operate without

15

protective matting or that radiation levels would restrict access to the roof. Instead, Plaintiffs allege that because the installation did not meet their expectations, T-Mobile's assertions must have been false. This theory fails under Rule 9(b).

Plaintiffs' theorize that T-Mobile's assertions, representations, and omissions about the scope of work, work performance, and outcomes of the installation were, in hindsight, not true. However, Plaintiffs cannot rely on the benefit of hindsight in asserting the falsity of T-Mobile's representations. *See Glen Holly*, 100 F. Supp. 2d at 1093. Plaintiffs plead no contemporaneous facts, from the time the representations were made, that would lead the Court to find that T-Mobile deceived Plaintiffs about the scope of work, work performance, or outcomes of the project. Without contemporaneous facts affirming the falsity of T-Mobile's assertions, the assertions are merely opinions and not actionable by deceit. *See Glen Holly Ent.*, 100 F. Supp. 2d at 1093.

Consequently, the Plaintiffs' Complaint provides no basis for the Court to conclude T-Mobile's statements were false and that they knew they were false. Because Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard, Plaintiffs ultimately fail to state a claim for deceit (Count 3).

### b. Constructive Fraud (Count 4)

Legacy's argument on constructive fraud largely mimics its argument for deceit: Plaintiffs fail to identify with sufficient particularity, who made the

representations, when the representations were made, and where they were made; and Plaintiffs do not plead with particularity that T-Mobile's representations were untrue and were made, for this count, without any reasonable ground for believing they were true. (Doc. 23 at 9–12; Doc. 30).

Under Montana law, constructive fraud consists of:

(1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or (2) any action or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28-2-406.

In short, Count 4 alleges that T-Mobile: (1) "created a false impression concerning the Site Lease agreement the work needed and that would be done;" (2) breached their duty of "honesty in fact" and breached their duty to refrain from words and conduct that created false impressions; (3) induced Plaintiffs to make material decisions through "misleading words and conduct;" and (4) "knew they were misrepresenting their intentions." (Doc. 1-1 ¶¶ 62–67). Plaintiffs assert that T-Mobile gained an advantage by falsely promising quick, timely, non-invasive, and quality work, knowing these promises were untrue, to expand their network and "generate profit." (Doc. 26 at 15). Plaintiffs also argue that T-Mobile failed to disclose the risks of radiation and roof limitations, despite having special knowledge about cell tower installation. (*Id.* at 16).

17

Considering the Complaint as a whole, the Court first incorporates its reasoning from above and finds that Plaintiffs' pleading sufficiently puts T-Mobile on notice regarding "who," "when," and "where" the false assertions were made so they can prepare an adequate answer. Further, for the same reasons already stated, the Court finds there is no basis to conclude that T-Mobile's statements were false and, at the time they were made, T-Mobile knew of their falsity or was ignorant to their truth.

Again, Plaintiffs essentially ask the Court to infer that because T-Mobile's representations did not materialize as initially stated, that the representations must have been falsely made. (*Id.* at 15–16). Plaintiffs state that T-Mobile "created false impressions," "induced Plaintiffs," and "knowingly mispresented" their intention but plead no contemporaneous facts that would lead the Court to find that T-Mobile misled the Plaintiffs about the scope of work, the work performance, or outcomes of the installation. Any argument made by Plaintiffs in their briefing is mere conjecture. And any assurance T-Mobile may have made is mere opinion unless Plaintiffs produce contemporaneous facts to affirm the falsity. They have not done so here. As stated, Plaintiffs cannot rely on the benefit of hindsight in asserting the falsity of T-Mobile's representations. *See Glen Holly*, 100 F. Supp. 2d at 1093.

Accordingly, the Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard and ultimately, fail to state a claim for constructive fraud (Count 4).

### c. Negligent Misrepresentation (Count 5)

Legacy makes the same argument as it did to counter Plaintiffs' deceit and constructive fraud counts and the Court again, incorporates its reasoning from above and finds that Plaintiffs' pleading sufficiently puts T-Mobile on notice regarding "who," "when," and "where" the false assertions were made so they can prepare an adequate answer. As for the remaining falsity argument under Rule 9(b), Plaintiffs' Count 5 merely restates the elements of negligent misrepresentation and thus, the Court turns to the same facts Plaintiffs repeatedly allege as to what statements were false and why.

> A party asserting a claim for negligent misrepresentation must demonstrate:
>
> (1) the defendant made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce the plaintiff to rely on it; (5) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; (6) the plaintiff, as a result of its reliance, must sustain damage.

*Morro v. Bank of America, N.A.*, 324 P.3d 1167, 1180 (Mont. 2014).

For the same reasons already stated, the Court finds there is no basis to conclude that T-Mobile's representations were false and, at the time the representations were made, that T-Mobile knew they were false or ignorant of their truth.

The installation did not go as expected, however, Plaintiffs do not allege, for example, that T-Mobile knew or was ignorant to the fact, at the time the representations were made, that the project would be invasive or that the workmanship would be incompetent. Nor do they claim T-Mobile was aware or ignorant of the fact that the leased space contemplated by the Lease Agreement would extend beyond the elevated platform and include warning signs affecting roof access. Rather, Plaintiffs allege that various promises were not fulfilled as expected. In Plaintiffs' response brief, they argue that T-Mobile's intent to misrepresent is "obvious." (Doc. 26 at 18). They assert that if T-Mobile had disclosed potential building damage, harmful radiation, and the lack of payment for repairs, they would not have signed the Site Lease Agreement. (*Id.*). Retrospection, however, does not give rise to a negligent misrepresentation claim.

Without an affirmation of past or existing facts regarding the falsity of the representations at the time they were made, any predictions about future events are merely opinions, and not actionable by fraud. *See Glen Holly*, 100 F. Supp. 2d at 1093. Accordingly, the Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard and ultimately, fail to state a claim for negligent misrepresentation (Count 5).

/ / /

/ / /

### 3.    *Leave to Amend*

Leave to amend should be granted unless the pleading "could not possibly be cured" by the allegation of other facts. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). This approach is required by Federal Rule of Civil Procedure 15(a), which provides that leave to amend should be freely granted "when justice so requires." Thus, the Court dismisses Plaintiffs' deceit (Count 3), constructive fraud (Count 4), and negligent misrepresentation (Count 5) claims with leave to amend.

### B.    *Motion to Dismiss T-Mobile's Third-Party Complaint*

Next, Legacy moves to dismiss T-Mobile's Third-Party Complaint arguing it fails to state a claim for relief to the extent it seeks indemnity or contribution for damages based on its own negligence. (Doc. 23 at 14–16). T-Mobile and Legacy entered into a Master Statement of Work (MSOW) in 2022 which forms the basis of T-Mobile's Complaint.[4] Pursuant to the MSOW, Legacy argues that it is not responsible for T-Mobile's negligence and T-Mobile concedes to this argument. (Doc. 29 at 4 n.1 ("T-Mobile concedes the [MSOW] does not provide indemnification by Legacy for T-Mobile's own torts.")).

---

[4] A court may consider extrinsic evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the document's authenticity. *Marder v. Lopez*, 430 F.3d 445, 448 (9th Cir. 2006); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Here, the MSOW satisfies all elements and is incorporated by reference.

In its briefing, T-Mobile asserts that pursuant to the MSOW, Legacy is on the hook for its own negligent actions to which Legacy does not dispute. (*Id.* at 4). The issue with T-Mobile's argument, however, is that it fails to plead this fact in its Third-Party Complaint. Instead, the Third-Party Complaint states: "The MSOW required Legacy—in the event of any negligence *by T-Mobile* and/or its agents/contractors—to indemnify T-Mobile for any liability resulting from any *such* negligence." (Doc. 14 ¶ 12) (emphasis added). Likewise: "In the event *T-Mobile is held liable* to Plaintiffs for any alleged damages . . . then Legacy has a duty to indemnify T-Mobile for damages related to any negligence *by T-Mobile*." (*Id.* ¶ 13) (emphasis added).

In short, T-Mobile's concession that Legacy is not required to indemnify T-Mobile for T-Mobile's torts does not comport with the allegations in its pleading. Accordingly, T-Mobile fails to state a cognizable legal theory for which relief can be granted. The Court nevertheless grants T-Mobile leave to amend its Third-Party Complaint within the timeline set out below. Fed. R. Civ. P. 15(a).

## IV.   Conclusion

The Court finds that Plaintiffs fail to state a claim for deceit (Count 3), constructive fraud (Count 4), and negligent misrepresentation (Count 5) because they do not meet Rule 9(b)'s particularity standard. Further, T-Mobile fails to state

a claim for which relief can be granted provided its concession that Legacy is not responsible for T-Mobile's torts. Therefore,

IT IS HEREBY ORDERED that:

1. Legacy's Motion to Dismiss Counts 3, 4, and 5 of Plaintiffs' Complaint and Defendant T-Mobile's Third-Party Complaint (Doc. 20) is GRANTED with LEAVE TO AMEND;

2. Plaintiffs shall have 30 days to file an amended complaint; and

3. T-Mobile shall have 30 days to file an amended complaint. T-Mobile shall further amend its complaint to include headings for each count alleged.

DATED this 22nd day of July, 2025.

SUSAN P. WATTERS
United States District Judge

23