IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JASON MADILL, TAMARA MADILL, and FOUR TEN CENTRAL LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>T-MOBILE WEST LLC, DOES 1–4, and X, Y, Z COMPANIES,<br><br>Defendants/Third-Party Plaintiffs,<br><br>vs.<br><br>LEGACY TELECOMMUNICATIONS, LLC,<br><br>Third-Party Defendant. | CV 24-114-GF-SPW<br><br>ORDER ON T-MOBILE WEST LLC'S MOTION TO DISMISS COUNTS 3, 4, AND 5 OF PLAINTIFFS' FIRST AMENDED COMPLAINT |

Defendant/Third-Party Plaintiff T-Mobile West LLC ("T-Mobile") has filed a Motion to Dismiss Counts 3, 4, and 5 of Plaintiffs' First Amended Complaint. (Doc. 49). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 50, 54, 57).

For the following reasons, the Court grants T-Mobile's Motion.

///

///

1

## I. Background

In 2017, Jason and Tammy Madill purchased real property, colloquially known as the "Strain Building," in Great Falls, Montana.[1] (Doc. 41 at 3–4). T-Mobile is a limited liability company operating and doing business in the wireless communications industry, including in Montana. (Doc. 14 at 3). Plaintiffs' action arises from T-Mobile's installation of new cellular equipment on the existing cellular tower located on the Strain Building's roof.

In July 2020, T-Mobile approached Plaintiffs about using the Strain Building's cellular tower for its network. (Doc. 41 at 7). T-Mobile claimed the installation would be "quick, timely, [and] non-invasive" and that all work personnel would be "competent, qualified, and experienced." (*Id.* at 7–8, 13). It did not anticipate that workers or equipment would be on the roof and represented to Plaintiffs that most work would occur on the elevated platform, which held the cellular tower. (*Id.* at 8). If roof access was needed, T-Mobile assured that protective matting would be used to prevent damages. (*Id.* at 9). However, according to Plaintiffs, T-Mobile's representations about the scope and impact of the work were "knowingly false." (*Id.* at 8).

---

[1] Four Ten Central LLC assumed ownership of the property on April 10, 2024. (Doc. 41 at 5).

2

In August 2020, Jason sent an email to one of T-Mobile's contractors asking if any of the equipment would "create any radiation or anything that could be considered detrimental." (*Id.* at 11). T-Mobile's response allegedly "concealed the true material facts" regarding the danger of the equipment, including the amount of radiation emissions and that the installment would require special warning signs to be placed on the roof. (*Id.* at 11–12).

Based on the above representations, Plaintiffs entered into a Site Lease Agreement ("Agreement") (Doc. 41-1) with T-Mobile on July 3, 2021, after which T-Mobile began the installation. (Doc. 41 at 14). One provision of the Agreement required T-Mobile to coordinate and pay for repairs caused by T-Mobile or its contractors. (*Id.*). However, Plaintiffs allege that T-Mobile "knew it had no intention of ever complying" with that provision. (*Id.*).

Ultimately, T-Mobile's work caused significant damage to the Strain Building's roof, supporting structure, and interior. During installation, the roof began leaking after T-Mobile made cuts, tears, and holes in the synthetic membrane. (*Id.* at 15). When the sixth floor experienced water damage, T-Mobile was notified and temporarily fixed the leaks with Flex Seal and Gorilla Tape. (*Id.*). T-Mobile worked on the roof without protective mats and on one occasion, left an unsecured communication box unattended, which froze, thawed, and damaged the roof's membrane. (*Id.* at 16). Workers used, stored, and moved heavy equipment across

3

the roof. (*Id.* at 16–17). Plaintiffs allege "177 instances of piercings, holes, lacerations, tears and places where the roof has been pulled away from the building." (*Id.* at 18).

After the installation, T-Mobile placed signs at the roof's entrance warning that radio frequency fields exceeded Federal Communications Commission limits. (*Id.* at 24). Additional signs were placed on the roof warning about levels of radiation emissions. (*Id.* at 25).

Plaintiffs fault T-Mobile for hundreds of thousands of dollars spent on repairs and mitigation, claiming that the roof's membrane, substrate, and supporting structure need replacement due to T-Mobile's installation. (*Id.* at 23–24). They also seek to hold T-Mobile responsible for the access restrictions and risks of radiation emissions now in place on the roof. (*Id.* at 26).

On October 1, 2024, Plaintiffs filed their Complaint (Doc. 1-1) against T-Mobile in the Montana Eighth Judicial District Court, Cascade County. T-Mobile removed the case to this Court based on diversity jurisdiction. (Docs. 1, 4). T-Mobile subsequently answered Plaintiffs' Complaint on December 20, 2024. (Doc. 4).

By leave of Court, T-Mobile filed a Third-Party Complaint against Legacy Telecommunications, LLC ("Legacy") in March 2025. (Doc. 14). Legacy filed a motion to dismiss the Third-Party Complaint and Counts 3–5 (deceit, negligent

4

misrepresentation, and constructive fraud) of Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 14(a)(2)(C), 12(b)(6), and 9(b). (Doc. 20). The Court granted Legacy's motion on July 22, 2025, and provided Plaintiffs leave to amend. Plaintiffs filed their First Amended Complaint ("FAC") on August 21, 2025, realleging Counts 3–5. (Doc. 41). The FAC alleges negligence (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), deceit (Count 3), constructive fraud (Count 4), negligent misrepresentation (Count 5), and breach of contract (Count 6) against T-Mobile.

## II. Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the

non-movant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "Dismissal . . . is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III. Discussion

### A. Timeliness of T-Mobile's Motion

As a preliminary matter, Plaintiffs argue that the Court should deny T-Mobile's Motion because, in their view, Federal Rule of Civil Procedure 12(b) bars a party from moving to dismiss allegations in an amended complaint when those allegations were already answered in an earlier pleading. (Doc. 54 at 6). The Court disagrees.

In general, "an amended complaint super[s]edes the original complaint and renders it without legal effect." *Lacey v. Maricopa County*, 693 F.3d 896, 925, 927 (9th Cir. 2012). However, unlike a complaint, "Rule 15(a)(3) does not render a prior response to a prior pleading moot." *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 715 (9th Cir. 2020). For example, "[a] defendant is not required to file a new answer to an amended complaint when the allegations in the amended complaint do not 'change the theory or scope of the case.'" *Id.* (quoting *Stanley Works v. Snydergeneral Corp.*, 781 F. Supp. 659, 665 (E.D. Cal. 1990)). At the same time, Ninth Circuit district courts have followed the general rule that "an amended

6

complaint does not revive the right to file a post-answer motion to dismiss," except when the plaintiff alleges new matter. *Brooks v. Caswell*, No. 3:14-cv-01232, 2016 WL 866303, at *1 (D. Or. Mar. 2, 2016). Accordingly, if a plaintiff alleges new matter, or changes the theory or scope of the case, then a responsive pleading is allowed and pursuant to Rule 12(b), a defendant is required to file a Rule 12(b)(6) motion before answering the pleading. Fed. R. Civ. P 12(b) (A Rule 12(b)(6) motion "must be made before a pleading if a responsive pleading is allowed."). Thus, whether a Rule 12(b)(6) motion is permitted in this instance turns on Plaintiffs' construction of and allegations in their FAC.

Plaintiffs rely on *Brooks*, and other district court cases like it, to support the notion that the FAC does no more than substantiate their existing claims, and flesh out additional facts, which should prohibit T-Mobile from filing their Motion. (Doc. 54 at 6–8 (citing *Balcom v. Peterson*, No. 3:23-cv-00528, 2024 WL 923533, at *5 (D. Or. Feb. 16, 2024); *Pascal v. Concentra, Inc.*, No. 19-cv-02559, 2020 WL 4923974, at *2 (N.D. Cal. Aug. 21, 2020); *Power Probe Grp., Inc. v. Innova Elecs. Corp.*, 670 F. Supp. 3d 1143, 1147 (D. Nev. 2023); *Best Fresh LLC v. Vantaggio Farming Corp.*, No. 3:21-cv-00131, 2022 WL 4112231 (S.D. Cal. Sept. 8, 2022))).

The *Brooks* court considered the defendant's motion to dismiss untimely because it was filed after the defendant had already answered the initial complaint multiple times, and the amendments did not introduce new claims justifying a post-

answer motion to dismiss. 2016 WL 866303, at *2. However, the "dispositive question" was whether the plaintiff's amendments to her initial complaint "so transformed one or more of the claims in the [a]mended complaint . . . to restore [d]efendants' opportunity to file a motion to dismiss." *Id.* at *3. The court found that they did not. Rather, the amendment "merely . . . correct[ed] insufficient allegations and flesh[ed] out arguments that were previously bare." *Id.* For that reason, the defendants had no basis to file a post-answer motion to dismiss.

By contrast, T-Mobile relies on *Best Fresh LLC*, to argue that while the district court may bar a defendant from challenging existing claims, it may allow a defendant to challenge causes of action that were previously dismissed and filed anew in the amended complaint. (Doc. 57 at 14). The *Best Fresh LLC* court, like *Brooks*, "follow[ed] the general rule that only new allegations—and arguments previously unavailable—[could] be considered in resolving the . . . [m]otion to [d]ismiss. *Best Fresh LLC*, 2022 WL 4112231, at *10. Though the amended complaint mostly substantiated claims asserted in the original complaint, the court considered only those arguments that were based on new factual allegations. *Id.* The court otherwise rejected arguments previously available as waived and untimely.

Here, unlike most of the cases cited by Plaintiffs, the Court dismissed Counts 3–5 of Plaintiffs' original complaint for lacking sufficient factual detail to support a cognizable legal theory. Plaintiffs' FAC therefore necessitates new and additional

8

facts to cure the deficiencies identified by the Court. By arguing that their FAC merely substantiates the previously dismissed claims, Plaintiffs effectively admit that the FAC does not comply with the Court's prior ruling and as such, will not satisfy the pleading standards under Rules 12(b) and 9.

In light of the Court's prior ruling, the prevailing practice in Ninth Circuit district courts, and to promote efficient resolution of these issues, the Court concludes that Plaintiffs have purportedly alleged new facts and therefore T-Mobile's Motion is timely.

B.    *Federal Rule of Civil Procedure 9(b)*

Counts 3–5 of the FAC are subject to Rule 9(b)'s heightened pleading standard as fraud-based claims. *See Let's Get Moving, Llp v. Lagestics, LLC*, No. CV-23-14-BU, 2023 WL 8111595, at *3 (D. Mont. Nov. 22, 2023); *Deveraux v. Meadowlark of Billings LLC*, No. CV 22-136-BLG, 2023 WL 2330311, at *2 (D. Mont. Mar. 2, 2023). Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." This means "[a] complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false' to satisfy the heightened pleading standard." *Let's Get Moving*, 2023 WL 8111595, at *3 (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)). "And to do so, [a complaint] cannot rely on hindsight; rather, it must explain 'why the

statements were false or misleading at the time they were made.'" *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (quoting *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012)).

Previously, the Court dismissed Counts 3–5 because Plaintiffs failed to allege sufficient facts to meet the second prong of this test—namely, what was false or misleading about the allegedly fraudulent statements, and why. (Doc. 31 at 16, 18, 20). Plaintiffs have again missed the mark.

In the Ninth Circuit, Rule 9(b) fulfills two primary functions. First, "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Second, the rule functions "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing . . . enormous social and economic costs absent some factual basis." *Id.* at 1018 (alteration in original) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). "By requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges." *United States v. United Healthcare Ins.*, 848 F.3d 1161,

1180 (9th Cir. 2016). Pertinent here, "mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds by*, *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).

For a second time, Plaintiffs set forth broad allegations lacking particularized supporting detail. The highly repetitive FAC restates the same core allegations and substantive ideas across multiple sections, almost word-for-word. Though the FAC is sufficient to "give [T-Mobile] notice of the particular misconduct which is alleged," it is insufficient to show the allegations have any "factual basis." *Bly-Magee*, 236 F.3d at 1018–19.

For instance, Plaintiffs allege that T-Mobile knew the scope and impact of the work would not be "quick, timely, [or] non-invasive," and that this representation otherwise induced Plaintiffs to enter the Agreement. (Doc. 41 at 7–8, 36–37, 45–46, 53–54). Likewise, Plaintiffs allege that T-Mobile knew the installment would require the presence of workers and equipment on the roof without protective matting, despite promising otherwise. (*Id.* at 8–9, 37, 46, 54). Plaintiffs further allege that T-Mobile knew it would not provide a "competent, qualified, and experienced" crew. (*Id.* at 13–14, 38, 46–47, 54–55). These allegations describe some detail of a generalized scheme but provide no specific facts showing how T-Mobile knew the falsity of the statements at the time they were made.

11

Plaintiffs further fail to identify contemporaneous facts, documents, or knowledge contradicting the efficacy of the alleged false statements. For example, Plaintiffs allege that T-Mobile knew its representations were false based on its specialized experience with cellular installations, prior lawsuits arising out of substandard work, and one comment from T-Mobile's engineer that Plaintiffs "correctly" blamed T-Mobile for causing roof damage. However, these allegations rely on vague, generalized knowledge and speculative implications garnered from the benefit of hindsight. They do not explain with particularized facts why the statements were false or misleading at the time they were made. Plaintiffs more aptly allege that T-Mobile should have known the work was not going to go as planned. While this type of allegation invokes a negligence standard, it does not invoke the standards for deceit, negligent misrepresentation, or constructive fraud.

Plaintiffs also allege that T-Mobile never intended to comply with the contractual provision to coordinate and pay for repairs, though the Agreement stated otherwise. (*Id.* at 14, 40–41, 48–50, 56–58). Again, Plaintiffs make no showing that this contractual provision was falsely made. Plaintiffs include no contemporaneous facts, documents, or knowledge to indicate that T-Mobile never intended to coordinate or pay for repairs. Rather, Plaintiffs assert that because the work did not go as planned, T-Mobile must have been fraudulent. This allegation also relies heavily on the benefit of hindsight and more aptly invokes a breach of contract

standard, not the standards for deceit, negligent misrepresentation, or constructive fraud.

Finally, Plaintiffs allege that T-Mobile knew the cellular equipment would emit radiofrequency radiation requiring warnings and special precautions, despite representing otherwise. (*Id.* at 10–13, 24–25, 39–40, 47–48, 55–56). To support this allegation, Plaintiffs assert the following:

> Jason specifically asked if any equipment [T-Mobile] wanted to install at the Strain Building would create any radiation or anything that could be considered detrimental. Given its experience with cellular equipment and networks, [T-Mobile] . . . knew the equipment it intended to install at the Strain Building would cause and emit radiofrequency radiation and require warnings and special precautions. Instead of disclosing these material facts to Plaintiffs and in response to Jason's specific email asking for this information, [T-Mobile] . . . concealed the true material facts and made knowingly false representations. [T-Mobile] . . . falsely represented . . . that [the] equipment posed no danger, no radiation or radio waves would be emitted . . . , and no warnings or special precautions would be required . . . .

(*Id.* at 11).

Though this allegation moves in the right direction, it ultimately falls short of meeting Rule 9(b)'s standard. It is not enough to allege generalized knowledge of the risks of radiation. Plaintiffs needed to assert contemporaneous facts demonstrating T-Mobile's representations with particularized information contradicting those representations. Indeed, Plaintiffs presumably possess the precise statements included in T-Mobile's response email but fail to include them

13

here. Without them, the allegation is framed at a high level of generality insufficient to satisfy Rule 9(b)'s particularity requirement.

A similar defect undermines Plaintiffs' attempt to use T-Mobile's Form 10-K to show knowledge. According to Plaintiffs, T-Mobile's assurances concerning radiation risks were knowingly false because its Form 10-K acknowledges potential health risks from wireless transmission equipment. (*Id.* at 39). However, this public filing does not link T-Mobile's actual knowledge of falsity to a statement made to Plaintiffs. The allegation is again too generalized without identifying which statements were false or what information contradicted them, let alone how the two are linked.

Based on the foregoing, Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard and ultimately, fail to state claims for deceit, negligent misrepresentation, and constructive fraud.

C.   *Leave to Amend*

Leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Bly-Magee*, 236 F.3d at 1019 (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). "This approach is required by Federal Rule of Civil Procedure 15(a), which provides that leave to amend should be freely granted 'when justice so requires.'" *Id.* (quoting Fed. R. Civ. P. 15(a)). Plaintiffs have now had two opportunities to allege sufficient facts to support a

14

cognizable legal theory. Plaintiffs have also had the benefit of engaging in and utilizing discovery before filing their FAC. Despite this, Plaintiffs' FAC merely quadrupled the length of the original complaint with repetitious generalizations and conclusory assertions insufficient to meet Rule 9(b)'s particularity requirements. Accordingly, the Court finds that a third amended complaint would be futile and therefore denies leave to amend.

## IV. Conclusion

IT IS HEREBY ORDERED that:

(1) T-Mobile's Motion to Dismiss Counts 3, 4, and 5 of Plaintiffs' First Amended Complaint (Doc. 49) is GRANTED.

(2) Counts 3–5 of Plaintiffs' First Amended Complaint (Doc. 41) are DISMISSED WITH PREJUDICE.

(3) T-Mobile shall have 14 days from the date of this Order to file its answer to the First Amended Complaint (Doc. 41).

DATED this 29th day of January, 2026.

SUSAN P. WATTERS
United States District Judge